**Susan L. KESLER, Appellee,**

v.

**Conrad E. WENIGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 30, 1999.
Filed Jan. 7, 2000.

---

William J. Gregg, Conneaut Lake, for appellant.

Barbara J. Walton, Meadville, for appellee.

Before HUDOCK, EAKIN and BECK, JJ.

EAKIN, J.:

¶ 1 Conrad E. Weniger and Susan L. Kesler are the parents of a son, born December 29, 1994. They began a sexual relationship 15 years before, while both were married to others. Kesler's husband died in 1988, and she did not remarry; Weniger remained married to another through the birth of this child. While not contesting his paternity, Weniger contends Kesler is estopped from pursuing child support because of her conduct before conception of the child. He argues Kesler agreed that if he helped her conceive, he would not be responsible for financial support of that child.

¶ 2 The learned trial court Gordon R. Miller, P.J., did not accept appellant's contention an agreement of this kind existed, and further held:

> Notwithstanding the conclusion we have already reached [finding Father's version incredible], we move on to the question of whether or not plaintiff-mother could lawfully release defendant-father from his support obligation. The answer is "no." A child's right to support from a natural father cannot be bargained away by the child's mother and any release or compromise by the mother and father is invalid to the extent that it is a prejudice to the welfare of the child involved.

Trial Court Opinion, 2/23/99, at 6 (citations omitted).

¶ 3 Appellant acknowledges this general principle of law. He argues this case is distinguishable because the agreement occurred before the child was conceived; he would not have participated in the conception of that child had not Kesler promised she would not seek support from him. He frames his issue as follows:

Whether a mother of a child can be estopped by her conduct from asserting a claim for child support against the child's father, when the subject child would not have been conceived but for such conduct.

¶ 4 The trial court rejected the version of 15 years of compassionate but clinical assistance offered by appellant, finding credible Kesler's picture of a slightly more romantic affair. We have no reason to disagree.

Since abuse of discretion allegations call for a review of the record, it is important to remember that this Court "is not free to usurp the trial court's duty as the finder of fact." As this Court stated on prior occasions, "appellate courts are becoming more reluctant to substitute themselves as super-support courts when they have not had the opportunity to see and hear the witnesses and so determine credibility."

*Simmons v. Simmons*, 723 A.2d 221, 223 (Pa.Super.1998) (citations omitted). We find no abuse of discretion in the determination of the facts.

¶ 5 In Pennsylvania, a parent cannot bind a child or bargain away that child's right to support. *Nicholson v. Combs*, 550 Pa. 23, 33–35, 703 A.2d 407, 412 (1997); *see also Ruth F. v. Robert B.*, 456 Pa.Super. 398, 401–02, 690 A.2d 1171, 1172 (1997)(finding agreement to forgo support a nullity). These cases and others cited by both parties deal with agreements reached after the birth of the child, a distinction which appellant argues goes to the fairness of the principle. Arguing those parents "voluntarily helped" in conception, he contends he would not have participated in this conception without the negotiated elimination of any obligation to support, which estops Kesler from receiving support.

¶ 6 This is not a case of an anonymous clinical donor or a sperm bank. While science has enabled all manner of assisted conception, variations of which continue to evolve, we decline to recognize a category of "artificial insemination by intercourse." Even if appellant's role has been as he suggests, merely that of a man obliging a friend with donations of sperm for 15 years, he cannot avoid his obligation to the child. It matters not when an agreement to forego support occurred; the right to support is a right of the child, not the mother or father. It cannot be bargained away before conception any more than it can be bargained away after birth, nor can it be extinguished by principles of estoppel.

¶ 7 Order affirmed.

¶ 8 BECK, J., files a Concurring Opinion.

BECK, J., concurring:

¶ 1 I concur in the result.

¶ 2 As the majority accurately relates, this case involves a creative defense by appellant father to an action for child support brought by appellee mother. Father contends that he and mother expressly agreed, prior to conception of the child for whom support is sought, that father would have no obligation to support any child mother conceived as a result of the parties' sexual relationship. The trial court found as a fact that no such agreement existed. The trial court then proceeded to analyze the legal effect such an agreement might have, if it did exist. The latter discussion is clearly *dicta*.

¶ 3 In its opinion the majority correctly concludes that appellant has failed to prove the existence of an agreement. The majority then hypothesizes that were such an agreement to exist, it would not be enforceable. In light of the growing legal and ethical complexity in the area of reproduction it seems that the wiser course is to refrain from expressing views relating to the enforceability of such contracts until such time that the issue is squarely before us.

¶ 4 Therefore, I join in the majority's affirmance on the ground that the trial court's factual conclusions are correct. Because there is no valid agreement before us, I do not join in the majority's analysis of the effect of a pre-conception agreement purportedly relieving one party of the duty of support.